UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SOUTHERN-OWNERS INSURANCE COMPANY and
AUTO-OWNERS INSURANCE COMPANY,

    Plaintiffs,
v.                                                CASE NO. 8:13-cv-2887-T-17MAP

YVONNE HERRERA; and
LAWRENCE A. ROBERTS

    Defendants.
_____/

## ORDER

This matter is before the Court on Plaintiffs', Southern-Owners Insurance Company ("Southern-Owners") and Auto-Owners Insurance Company's ("Auto-Owners"), Motion for Summary Judgment (the "Motion"). (Doc. # 37). Southern-Owners and Auto-Owners seek a declaration that no insurance coverage exists for Defendant Lawrence A. Roberts ("Roberts") in an underlying liability action involving fraud claims Defendant Yvonne Herrera ("Herrera") made in her purchase of a newly built home. The Court notes that Defendant Roberts, to whom the motion was directed, has not responded and therefore the Court takes the motion as unopposed. See Local Rule 3.01(b). This Court grants the Motion and declares Plaintiff's insurance policies in this case do not cover Roberts, and thus, Plaintiffs have no duty to defend or indemnify Roberts in the underlying action.

**I.    BACKGROUND**

    a.  <u>Underlying Liability Action</u>

Herrera filed suit against Roberts in the Tenth Judicial Circuit of Florida, Hardee County, Case No. 252013CA00. (Doc. # 37 at 1–2). In her complaint, Herrera asserted claims against the

1

developer of the home, Homes of Wauchula, Inc. ("Wauchula"), the real estate brokerage company connected with the sale of the home, Flores & Flores, Inc. ("Flores"), and Roberts, a licensed real estate broker who participated in the sale of the home. (Doc. # 37 at 2). The state court dismissed the claims against Wauchula and Flores, as well as several other claims against Roberts. (Doc. # 37 at 2). The subject of Plaintiff's Motion addresses the two counts remaining against Roberts including Fraudulent Non-Disclosure and Fraud in the Inducement. (Doc. # 37 at 2).

In her complaint, Herrera asserts Roberts and his co-defendants were aware the vacant property upon which Herrera's home was built was used as a "dumping pit . . . used by local residents as an unofficial place to discard trash, old furniture, metal objects, tires, paint cans and numerous other unknown items." (Doc. # 37 at 2). Wauchula purchased the vacant lot, "backfilled the dumping pit with dirt and then leveled the ground," before building upon it the house Herrera purchased. (Doc. # 37 at 2–3). After her purchase, Herrera claimslarge cracks began to form throughout the home, allegedly caused by the buried debris under the residence. (Doc. # 37 at 3). The cracks led to the property becoming uninsurable with "almost no market value." (Doc. # 37 at 3).

Herrera claims the contract for the home stated the Seller did not know any facts which would "materially affect the value of the property." (Doc. # 37 at 3). She further asserted her purchase "[r][ied] upon the contract, the realtor's fiduciary duties of honesty and fair dealing, and the non-disclosure of any material fact that would affect the value of the property." (Doc. # 37 at 3). The "Disclosures" portion of the contract upon which Herrera purportedly relied states: "Seller represents that Seller does not know of any facts that materially affect the value of the property, including but not limited to violations of government laws, rules and regulations, other

than those that Buyer can readily observe or that are known by or have been disclosed to Buyer." (Doc. # 37 at 3).

Roberts is identified in the contract for the home as "Broker/Salesperson for Flores & Flores, Inc." (Doc. # 37 at 5). Herrera alleges that before the sales contract was executed, Roberts, in his capacity as the salesperson or broker for the home, provided the contract for it, with the disclosure statement. Herrera further asserts "Roberts had a fiduciary duty as a licensed real estate agent and/or broker salesperson to notify the buyer of the latent defect to the property." (Doc. # 37 at 5).

Since Roberts allegedly knew about the dumping pit but did not inform Herrera, Herrera claims Roberts caused her damages because she had no way of knowing the ground beneath the home was contaminated with garbage. (Doc. # 37 at 4). Herrera argues Roberts' "[f]ailure to disclose such a condition to [sic] the real property is outrageous and contrary to Florida Law in accordance with Johnson v. Davis, 480 So. 2d 625 (Fla. 1985)." (Doc. # 37 at 4). Herrera also notes Roberts was compensated for his part in the transaction. (Doc. # 37 at 5).

Finally, for damages, Herrera states Roberts' failure to disclose the latent defects underneath the home "damaged Plaintiff in an incalculable amount, including but not limited to the full value of the purchased home, interest paid, pre judgment interest, moving expenses and costs associated with bringing and evaluating this latent defect." (Doc. # 37 at 5).

## II. DISCUSSION

### a. The Defendant's Policies do not cover the damages in the Underlying Amended Complaint

Southern-Owners issued a "Businessowners" policy to Defendant Flores in effect during the time of the alleged fraud. (Doc. # 37 at 6). Auto-Owners issued an "Executive Umbrella" ("Umbrella") policy to Defendant Roberts also in effect during the relevant time period. (Doc. #

3

37 at 10). Both policies cover "personal [bodily] injury," and "property damage," caused by an "occurrence." (Doc. # 37 at 7–8, 11). Herrera's claims against Roberts, however, assert he failed to disclose or intentionally concealed a latent defect in the home allege economic losses and not that Roberts' conduct resulted in personal or bodily injury or property damage. Thus, the policies do not cover these claims.

<u>Colony Insurance Company v. Montecito Renaissance, Inc.</u>, No. 8:09-CV-1469-T-30MAP, 2011 WL 4529948 (M.D. Fla. Sept. 30, 2011), addressed a similar coverage issue. In <u>Colony</u>, the insured property developer changed a building into a condominium complex, within which a condominium associated formed. <u>Id.</u> at *1. The association later filed a suit against the developer alleging fraud in the inducement and negligent misrepresentation because the developer did not make required disclosures in the "Final Disclosure of Building Conditions Report" and a "Prospectus." <u>Id.</u> at *2. Specifically, the developer failed to disclose "rotted fascias, mold and mildew, cracked stairway wall caps allowing water infiltration, a damaged retaining wall, inadequate gutters and downspouts, and soil erosion adjacent to the building foundation." <u>Id.</u> at *6. The association claimed this resulted in damages to the association. <u>Id.</u>

Colony, the developer's insurance company, filed an action seeking a declaration that coverage did not exist for the developer because the association's claims were outside the coverage or specifically excluded by the policy. <u>Id.</u> at *6. The policy protected the developer from "third party liability for 'bodily injury' and 'property damage' caused by an 'occurrence.'" <u>Id.</u> at *1. The association argued the negligent misrepresentation was the "occurrence" which deprived the association of the knowledge of the need to make repairs and funds to do so: the "property damage." <u>Id.</u> at *6–7.

The court rejected their argument, noting no Florida court has determined whether a

4

"negligent misrepresentation" could be defined as an occurrence under an insurance policy. Id. at *7. Furthermore, it was "clear that the Developer's alleged misrepresentation failed to cause the property damage." Id. The association argued the developer failed to deliver the property for which the parties' bargained, resulting in economic losses. Id. The physical damage to the property was caused by defective construction, not by the alleged non-disclosures. Id. at *8. "Notably, if the alleged defects had not already 'occurred' there would have been nothing for the Developer to disclose." Id.

The alleged conduct or "occurrence" must cause the "property damage" or "personal injury" to be covered by the insurance policy as opposed to a non-disclosure which leads to economic losses. See, e.g., State Farm and Casualty Co. v. Brewer, 914 F. Supp. 140 (S.D. Miss. 1996) (finding seller's non-disclosure of a termite infestation was not an "occurrence" that caused "property damage," but only resulted in economic damages); Atkinson v. Dollar Rent-A-Car, Inc., 525 So. 2d 976 (Fla. Dist. Ct. App. 1988) (concluding the negligent conduct of the uninsured motorist, and not the rental car company's failure to disclose uninsured motorist coverage, resulted in the alleged bodily injury).

Herrera alleges Roberts did not disclose "material fact[s] that would affect the value of the property," resulting in an uninsurable property with "almost no market value." Herrera does not allege Roberts filled the dumping pit, or caused the cracks to form in the home. Wauchula already built the home over the dumping pit, and Roberts did not disclose the defective construction which already occurred. If the construction had not been faulty, then Roberts would have nothing to disclose. Analogous to the condominium association's argument in Colony, Herrera argues she did not receive the property for which she bargained, not that the agent damaged her property. Roberts' non-disclosure was not the "occurrence" which led to the

"property damage," and is not, therefore, covered by the Plaintiffs' insurance policies..

Again, the property damage to Herrera's home was not caused by Roberts' non-disclosure, but was caused by Wauchula when they built the home on a dumping pit. Thus, Herrera's claims of fraud and negligent misrepresentation do not fall within the insuring obligations of the subject policies. See, e.g., Colony, at *7–8. See also Humana Worker's Comp. Servs. V. Home Emergency Servs., Inc., 842 So. 2d 778 (Fla. 2003) (claim that insured negligently spoliated evidence by discarding ladder upon which claimant was injured was not a claim for "bodily injury by accident" and thus not covered under Policy); Norris v. Colony Ins. Co., 760 So. 2d 1010 (Fla. Dist. Ct. App. 2000) (claim that insured negligently erased video tape, impairing claimant's ability to pursue bodily injury claim against third-party assailant, was not an "occurrence" resulting in bodily injury under insured's policy); XL Ins. Am., Inc. v. Ortiz, 673 F. Supp. 2d 1331, 1345 (S.D. Fla. 2009) (claim for failure to procure worker's compensation insurance was not a claim for bodily injury as a result of an occurrence).

    b. Exclusions also apply to the claimed damages

Herrera seeks to recover damages from economic losses suffered as a result of Roberts' non-disclosure of material facts about certain defects with the home Herrera purchased. Even if the damages could be qualified as property damage—which they cannot—the damages would still be excluded as a result of the pollution and business/professional activities exclusions included in both the Businessowners and Umbrella policies.

    i.    Pollution exclusions under the Businessowners policy and Umbrella policy

As for pollution exclusions, the Businessowners policy excludes coverage for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants . . . [a]t or from any site or location used by or

for you or others for the handling, storage, disposal, processing or treatment of waste." (Doc. # 37 at 8). "Pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." (Doc. # 37 at 9).

The Umbrella policy excludes coverage for bodily injury or property damage "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." (Doc. # 37 at 12). Pollutants are defined in the Umbrella policy in the same manner as the Businessowners policy. (Doc. # 37 at 13).

In James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1276–77 (11th Cir. 2008), the United States Court of Appeals for the Eleventh Circuit found that an exclusion similar to the one at issue in this case barred coverage for a claimant who argued the insured negligently failed to discover buried construction debris and fuel tanks during an insured's assessment of the property. The Court rejected the insured's argument that the construction debris was not a "pollutant." Id. at 1277. Noting waste includes "all . . . materials to be disposed of, recycled, stored, reconditioned, or reclaimed," the Court concluded "[o]nly a strained reading of this language would exclude construction debris . . . from this definition." Id.; see also Mt. Hawley Ins. Co. v. Dania Distribution Ctr. Ltd., 513 F. App'x. 890, 892-93 (11th Cir. 2013) (finding similar exclusion applied where underlying plaintiffs sought damages from the discharge of pollutants from property "once used for waste disposal").

Furthermore, pollution exclusions apply regardless of who the polluter was, focusing instead on the type of damages claimed. See Cont'l Cas. Co. v. City of Jacksonville, 654 F. Supp. 2d 1338, 1344 (M.D. Fla. 2009) aff'd, 384 F. App'x 900 (11th Cir. 2010) (enforcing a pollution exclusion even though the purported insured was not the polluter, noting policy "makes

no coverage distinction regarding active and inactive polluters, and, under Florida law, this Court may not imply such a distinction").

Herrera alleges in her complaint the site her home was built on was "used by local residents as an unofficial place to discard trash, old furniture, metal objects, tires, paint cans and numerous other unknown items." The ground was "contaminated with garbage;" resulting in "shifting soil due to buried debris under the residence," leading to cracks in the home. Only a strained reading of the policy's language would exclude the dumping pit underneath Herrera's house as not fitting within the definition of the pollution exclusion in the policy. Additionally, the polluting party is immaterial, as the policy focuses on type of pollution and not who polluted. The damages claimed in this case fall within the pollution exclusions in both policies.

  ii. <u>Business/Professional activities exclusion under the Businessowners policy and Umbrella policy</u>

The Businessowners and Umbrella policies both contain exclusions for personal or bodily injury or property damage resulting from business or professional services actions or omissions. Specifically, the Businessowners policy excludes coverage for "bodily injury" or "property damage" due to performing or failure to perform any "professional services." (Doc. # 37 at 9–10). The Umbrella policy excludes coverage for personal injury or property damage resulting from "business pursuits" or the "rendering or failure to render a professional service." (Doc. # 37 at 12).

In Florida, "professional services" in an insurance policy has been defined as: "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." <u>Auto-Owners Ins. Co. v. E.N.D. Servs, Inc.</u>, 506 F. App'x. 920 (11th Cir. 2013). In <u>E.N.D. Services</u>, the Court found a home inspector subject to licensing and industry standards

fell within that definition. Id. Real estate brokers are statutorily bound to complete training, licensing, and continuing education. Fla. Stat. Ann. §§ 475.001–475.5018 (West, 2013). The Florida Supreme Court recognizes real estate brokers as working in a "professional service," as classified by the Florida Legislature. Rotemi Realty, Inc. v. Act Realty Co., 911 So. 2d 1181, 1187 (Fla. 2005). Professional services exclusions have been found to bar coverage in cases where the realtor misrepresented the condition of the property. See 3303-05 Marina Rd., LLC v. Zennett Properties, LLC, 724 N.W. 2d 273 (Wis. 2006).

According to Herrera's complaint, Roberts is a "licensed . . . real estate broker in Florida pursuant to Florida law," and had "a fiduciary duty as a licensed real estate agent and or broker/salesperson to notify the buyer of the latent defect to the property." Thus, as Roberts is alleged to have been performing a professional service, both policies exclude coverage for his alleged acts in this case.

Finally, the Umbrella policy excludes coverage for damages resulting from "business pursuits," and the policy defines "business" as "a trade, profession or occupation." Since Roberts was "licensed as a real estate broker in Florida pursuant to Florida law" and "was compensated as a result of the sale of the property," it is uncontested he was engaged in a business pursuit and the resulting transaction falls within the Umbrella policy's exclusion for business pursuits. See Gaynor v. Williams, 366 So. 2d 1243, 1244 (Fla. Dist. Ct. App. 1979).

Accordingly, it is **ORDERED** that summary judgment for the Plaintiffs, Southern-Owners Insurance Company and Auto-Owners Insurance Company, is **GRANTED**.

The Clerk of Court is **DIRECTED** to enter judgment for the Plaintiffs; to close this case; and to terminate any pending motions.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of July, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:   All Counsel and Parties of Record